POLEN, J.
Appellant, Edwin Deason, has timely appealed guilty verdicts from a jury trial for cruelty to animals and attempted inhumane slaughter of an animal due to the exclusion of evidence which tended to support Deason’s theory of defense. We reverse for the reason that follows.
On December 9, 2002, Deason was in Boca Raton at a home where pigs were maintained in the backyard. Accompanying Deason were his long-time girlfriend Tammy O’Brien, Carolyn Leonelli, John Grady, and Laurie Grady. According to O’Brien, all of the above mentioned individuals were in front of the house when they heard a pig squealing in the backyard. Everyone, including Deason, proceeded to the backyard whereupon O’Brien was the last to arrive. Upon her somewhat delayed arrival in the backyard, she saw Deason on one side of the cage and another individual, Bob “Big Bob” Weh-rheim, on the other side of the cage. According to O’Brien, the pig had already been stabbed and Big Bob handed Deason a knife. Leonelli corroborated this story for the most part. Notably, she added that she witnessed Big Bob retrieve a knife and walk to the backyard before all of the commotion began.
Deputy Robert Catalano was the first to respond to the scene and heard the pig squealing from the backyard. Catalano observed Big Bob lying on his stomach attempting to pull the injured pig out of the cage. Catalano saw a knife, although not the one used to stab the pig, in Big Bob’s hand. Big Bob was initially detained and questioned, but then released. According to Catalano, Deason, who was still present at the scene, was wearing clothes which were soiled in mud, pig feces and what appeared to be blood stains. Deason allegedly made a comment about wanting pork chops. Catalano acknowledged that he did not take the statements of any of the other individuals present at the scene. Notwithstanding, Catalano arrested Deason based on the sum total of his investigation.
Deputy Christine Kimball allegedly heard Deason say “yes I cut the pig, so what.” However, the other two deputies at the scene, who were both present at the time of the alleged statement, failed to hear Deason make such a remark. There was also another minor inconsistency in Kimball’s story because she testified that other than the smell of alcohol on Deason’s breath, there was no odor on his person. Kimball found the knife used to stab the pig in a flower pot with the wooden handle sticking out. Kimball could not recall if she spoke with any of the specific individuals present on the scene with the exception of Big Bob.
Animal control was eventually called and the pig was euthanized due to the extent of its injuries. Deason was later charged by amended information with cruelty to ani *60 mals and attempted inhumane slaughter of an animal. Prior to proceeding to trial, the State moved to suppress evidence of “whether or not any other defendants have been charged in this case with a crime.” The trial court ruled such evidence would be excluded. However, Deason argued his theory of the case was:
only one person committed the crime on this day, not multiple people, and that one person was someone else who wasn’t arrested.... I’m not trying to blame the State for their decision of who they charged, just they — the wrong person was arrested for this crime, not the person who committed the crime.
The trial court permitted this limited argument to be made at trial.
The trial began and the State presented a neighbor and Deputies Catalano and Kimball as well as two animal control workers. There was no “smoking gun” evidence against Deason. No one testified they saw Deason stab the pig. The only physical evidence was the reference to blood on Deason’s clothes. Deason presented Leonelli and O’Brien. Deason also recalled Catalano and attempted to elicit testimony that Big Bob was a confidential informant for the Palm Beach Sheriffs Office in unrelated cases. The purpose of this evidence would be to establish bias on the part of the deputies. The State immediately objected on relevancy grounds. During a sidebar, the State argued that this evidence goes back to the motion in limine of why the State did not charge Big Bob. The trial court ultimately sustained the State’s objection. The jury was instructed and returned guilty verdicts on both charges. Deason was sentenced to ninety days in jail followed by one year of probation.
Deason’s sole issue on appeal is that the trial court erred by prohibiting him from establishing bias on behalf of the deputies by introducing relevant evidence that Big Bob was a confidential informant in unrelated cases. We agree with Deason. “An accused has a right to present [relevant] evidence in his own defense.” Zanicchi v. State, 679 So.2d 40, 41 (Fla. 4th DCA 1996)(eiting Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). “Relevant evidence is evidence tending to prove or disprove a material fact.” § 90.401, Fla. Stat. We wish to make it clear that evidence of any involvement of a confidential informant is not per se admissible. Rather, the holding of this case is limited exclusively to the very specific facts of this case.
Deason’s defense at trial was that he did not stab the pig. Contrarily, Deason asserted that Big Bob did the stabbing. In support of this defense, Deason presented two witnesses who corroborated this story. Likewise, Deason argues that the fact that Big Bob was a confidential informant for the police tends to show a bias on the deputies’ behalf in trying to protect their interests in Big Bob. Whether this establishes bias is a question to be resolved by a jury, but this evidence was without doubt relevant. When the deputies arrived, it was Big Bob who was interacting with the injured pig. Big Bob was immediately detained, questioned and then released.
Thereafter, according to the deputies’ own accounts, Deason was arrested based on the sum total of the investigation. However, neither deputy took witness statements from any of the other individuals present at the scene. Moreover, there was, at best, contradicting evidence from Big Bob pointing to Deason as the perpetrator. As such, it remains a mystery exactly what the sum total of the deputies’ investigation consisted of, other than Big Bob’s statements. However, from an objective vantage point, it appears quite possible that the jury could find the deputies *61 selectively focused their investigation, ignoring any leads which could implicate Big Bob. Accordingly, the excluded evidence would tend to support Deason’s theory of defense. Nor do we find that this evidence would be so prejudicial that it would need to be excluded because its probative value is substantially outweighed by some perceived danger. See § 90.403, Fla. Stat. Consequently, the trial court abused its discretion and thus reversibly erred by excluding this evidence. We reverse and remand for a new trial consistent with this opinion.
REVERSED.
STONE and SHAHOOD, JJ., concur.